WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arthur James Beighley, Jr., | No. CV-17-08203-PCT-SMB |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff Arthur James Beighley, Jr.'s appeal of the Social Security Administration's decision to deny his application for benefits under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial pursuant to 42. U.S.C. § 405(g), and the Court now addresses Plaintiff's Opening Brief (Doc. 12), Defendant Commissioner of Social Security Administration's Opposition (Doc. 13), and Plaintiff's Reply (Doc. 14). The Court has reviewed the briefs and Administrative Record (Doc. 11, "AR") and now **AFFIRMS** the Administrative Law Judge's ("ALJ") decision (AR 29–36).

**I.     BACKGROUND**

The parties are familiar with the background information in this case, and it is summarized in the ALJ's decision. (AR 29). Accordingly, the Court will reference the background only as necessary to the analysis below.

///

///

## II. LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The district court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion. *Id.* If the evidence is susceptible to more than one rational interpretation, the court should uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (noting that the ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities). But the Court is tasked with considering "the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn*, 495 F.3d at 630 (citation and internal quotation marks omitted). "Finally, [courts] may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate non-disability determination. *Id.* at 1115. The "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

## III. FIVE-STEP EVALUATION

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To establish disability, the claimant must show that (1) he is not presently engaged in substantial gainful activity; (2) he has a "severe" medically determinable physical or mental impairment; and (3) his

impairment or combination of impairments meets or medically equals a listed impairment. 20 C.F.R. § 404.1520(a). If the claimant meets his burden through step three, the Commissioner must find him disabled. *Id.* If the claimant does not meet his burden at step three, the ALJ moves to step four which is whether claimant can show that (4) his residual functional capacity ("RFC") prevents his performance of any past relevant work. *Id.* If the inquiry proceeds to step four and the claimant shows that he is incapable of performing past relevant work, the Commissioner must show at step five that (5) the claimant is capable of other work suitable for his RFC, age, education, and work experience. *Id.*

Here, at step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 28, 2013. (AR 31). At step two, the ALJ found chronic obstructive pulmonary disease ("COPD") to be a severe impairment. (AR 31). At step three, the ALJ determined that Plaintiff's impairments did not meet or equal a listed impairment. (AR 32). The ALJ then found that Plaintiff had the RFC to perform "light" work as defined in 20 C.F.R. § 416.967(b), except the Plaintiff is limited to (1) lifting and/or carrying a maximum of 20 pounds occasionally and ten pounds frequently; (2) standing and/or walking six hours out of eight; (3) sitting six hours; (4) occasionally climbing stairs and/or ramps, but never ladders, ropes, or scaffolds; (5) occasionally stooping, kneeling, crouching, and crawling; and the Plaintiff (6) should avoid concentrated exposure to fumes, odors, dusts, gases, and unprotected heights. (AR 32). At step four, the ALJ found that Plaintiff could perform past relevant work as a driver. (AR 35–36). The ALJ therefore did not proceed to step five.

**IV. ANALYSIS**

Plaintiff raises only one argument for the Court's consideration—whether the RFC is supported by substantial evidence because the ALJ failed to properly evaluate the opinion evidence, specifically the February 23, 2015 residual functional capacity questionnaire (the "Questionnaire"). (Doc. 12 at 1, 8) (AR 432–435). The argument is based primarily on Plaintiff's assertion that the ALJ erroneously attributed the Questionnaire as being issued by Dr. Cardone instead of Dr. Aslam. (Doc. 12 at 8).

**A. Applicable Law**

The Ninth Circuit distinguishes between the opinions of treating physicians, examining physicians, and non-examining physicians. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Generally, an ALJ should give the greatest weight to a treating physician's opinion and more weight to the opinion of an examining physician than a non-examining physician. *See Andrews*, 53 F.3d at 1040–41; *see also* 20 C.F.R. § 404.1527(c)(2)–(6) (listing factors to be considered when evaluating opinion evidence, including length of examining or treating relationship, frequency of examination, and consistency with the record). If it is not contradicted by another doctor's opinion, the opinion of a treating or examining physician can be rejected only for "clear and convincing" reasons. *Lester*, 81 F.3d at 830 (citing *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988)). Under this standard, the ALJ may reject a treating or examining physician's opinion if it is "conclusory, brief, and unsupported by the record as a whole or by objective medical findings," *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citations omitted), or if there are significant discrepancies between the physician's opinion and claimant's clinical records. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

When a treating or examining physician's opinion is contradicted by another doctor, it can be rejected only for "specific and legitimate reasons that are supported by substantial evidence in the record." *Lester*, 81 F.3d at 830–31. To satisfy this requirement, the ALJ must set out "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (citation omitted). Under either standard, "[t]he ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (citation omitted).

**B. Opinion Evidence in the Record**

The ALJ issued the RFC assessment considering the following opinion evidence:

(1) opinion of Efren Cano, D.O., who administered a consultative exam, and to which the ALJ gave "partial weight"; (2) the opinion of Richard Cardone, M.D., treating physician, to which the ALJ gave "no weight"; and (3) the state agency medical consultants, to which the ALJ gave "little weight." (AR 34–35). The ALJ further stated that the RFC was based on findings of the state medical consultants, but noted that neither of the consultants assigned an RFC. (AR 35).

In assessing the opinion of Dr. Cardone, the ALJ referenced the February 23, 2015 Questionnaire. The ALJ found that Dr. Cardone's opinion was "significantly incongruent and contradicted by the available evidence." (AR 35). The ALJ further provided the following explanation for his finding:

> Dr. Cardone relied too heavily on the subjective complaints of the claimant. Dr. Cardone provided this assessment on February 23, 2015. Dr. Cardone last physically examined claimant on April 18, 2014. Additionally, the last physical examination Dr. Cardone administered in 2014 showed normal findings. In addition, claimant alleged no complaints during this examination. However, another physical examination of claimant on December 15, 2014 [sic]. During that examination claimant was "well-appearing and in no acute distress" and there was no noted edema and well-controlled blood pressure. Claimant also denied acute palpitations, fatigue, or shortness of breath during the examination. There was no wheezing, bronchi, or crepitation. The only support for any restriction was the avoidance of concentrated exposure to respiratory irritants.

(AR 35) (citations omitted).

Plaintiff now asserts that the ALJ erred because the Questionnaire was not issued by Dr. Cardone, but rather by another of Plaintiff's treating physicians at Western Mountain Medical Center, Dr. Nabila Aslam (through Dadiki Sherpa, PA). (Doc. 12 at 8). Defendant asserts that the ALJ attributed the Questionnaire to Dr. Cardone because the transmittal cover sheet sent to the SSA by Plaintiff's representative stated that the Questionnaire was from "Richard Cardone." (Doc. 13 at 2). Plaintiff does not contest that the transmittal cover sheet stated that the Questionnaire was from "Richard Cardone," and

attributes this to a "simple mistake by a case manager[.]" (Doc. 14 at 4).

In spite of the cover sheet stating that the Questionnaire was completed by Dr. Cardone, Plaintiff contends that "a review of the medical record shows that [the Questionnaire] was provided by Dr. Nabila Aslam through Dadiki Sherpa, PA." (Doc. 12 at 8). Plaintiff points to a February 9, 2015 report completed by Ms. Sherpa, in which Ms. Sherpa explained to Plaintiff that the paperwork would be completed in two weeks at Plaintiff's next appointment. (Doc. 12 at 8). The February 9, 2015 report states in relevant part as follows:

> In last time he had left up for work here for me to fill for disability[.] I have told him that he will not qualify for disability for his back problem, he is requesting simply disability given his COPD. I explained to patient to come back in 2 weeks, we will try to do the paperwork at that time.

(AR 581). Plaintiff then points to the treatment notes of Ms. Sherpa completed on February 23, 2015, (Doc. 12 at 8), which read in relevant part as follows:

> Patient is requesting [ ] disability paperwork filled for his COPD. I explained to patient that he most likely would not qualify for the disability because [his] COPD symptom is only on exertion, he could work which requires sitting as he does not have any problem sitting for 7–8 hours, in fact he tells me that he [can sit down] for 7–8 hours without any issues. I have filled the paperwork with Dr. Aslam, but [re-explained] to patient that most likely he would not qualify for disability. Patient was examined and evaluated with Dr. Aslam, dictation done by []Dadiki.

(AR 577). The Court also notes that the record shows that Plaintiff did indeed see Dr. Cardone on April 18, 2014 for a colonoscopy. (AR 440). Further, Dr. Cardone's 2014 progress notes for Plaintiff indicate that Dr. Aslam referred Plaintiff to Dr. Cardone for a colonoscopy, (AR 437), and progress notes from Ms. Sherpa on Dec. 16, 2013 indicate that Plaintiff was referred to "Gen. surgery for a colonoscopy." (AR 426). But during the hearing with the ALJ, Plaintiff's attorney specifically discussed Dr. Cardone with Plaintiff.

> Q   And who's Dr. Cardone [PHONETIC] or Cardone?

> A   He's the one that referred me to go see -- possibility to get surgery. He got a colostomy bag put on me.
> Q   Now is he like a primary care physician?
> A   No, he's a specialist in this field.
> Q   Now in 2015, he had filled out some paperwork for you in February of 2015. Dr. Richard Cardone?
> A   Yeah, that's when he had me do a colon test.
> Q   Okay. And he had mentioned the diagnosis was COPD. Does he treat you at all for your –
> A   Yeah.
> Q   -- COPD?
> A   Yeah, I see him every so often, but I mainly see my primary doctor.
> Q   Is he at Western Mountain Medical?
> A   Yes, he is.
> Q   Okay. At the same place, Dr. Obarka [PHONETIC] is?
> A   Yeah.
> Q   And you see them both?
> A   Right.

(AR 53–54) (alterations in original). Additionally, Plaintiff's counsel attributed the Questionnaire to Dr. Cardone when requesting review by the Appeals Council. (AR 228–29).

### C. Analysis

The issue before the Court is whether the ALJ provided specific and legitimate reasons supported by substantial evidence in the record for his decision to afford the opinion in the Questionnaire no weight. As an initial matter, while the evidence presented does appear to be susceptible to more than one rational interpretation, the court is required to uphold the ALJ's findings "if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d at 1111. In looking at the whole record, the Court finds it rational to conclude that the Questionnaire was completed by Dr. Cardone. *See Orn*, 495 F.3d at 630 ("[T]he court is tasked with considering the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."). Nothing on the Questionnaire itself indicates the name of the doctor issuing the opinion, and the transmittal cover sheet clearly states that the document attached is from Dr. Cardone.

(AR 432). While there is also evidence in the record, as Plaintiff notes, that Dr. Aslam might have completed the form, testimony from Plaintiff at the hearing provides further evidence as to why the ALJ may have concluded that the Questionnaire was completed by Dr. Cardone. (AR 53–54). In his testimony, Plaintiff testified that Dr. Cardone has treated Plaintiff for COPD, and not just for the 2014 colonoscopy. (AR 53). Plaintiff's attorney questioned Plaintiff specifically about paperwork completed in February 2015, and Plaintiff confirmed that Dr. Cardone completed paperwork at that time. (AR 53). There is no other paperwork in the record completed by Dr. Cardone in February 2015. Plaintiff also testified that Dr. Cardone has treated him at Western Mountain Medical Center, which is the same group through which Plaintiff has seen Dr. Aslam. (AR 53). This is not a case where the record clearly shows that a clerical error was unsupported by substantial evidence in the record. *See, e.g.*, *Browne v. Astrue*, No. CV-11-1740-PHX-SMM, 2012 WL 5868824, at *6 (D. Ariz. Nov. 19, 2012) (clerical error on one page of doctor's form regarding date form was completed led ALJ to conclude that doctor had only seen patient for one month; court found this reason unsupported by substantial evidence when the doctor's form also listed a later date of completion in another location and the record contained treatment notes for seven visits up until the date doctor actually completed form). The Court also notes that neither Plaintiff nor Plaintiff's attorney asserted that the Questionnaire was completed by anyone other than Dr. Cardone until this appeal. *See* AR 228–29 (requesting review by the Appeals Council without asserting the alternate interpretation). Even though Plaintiff's opening brief provides another possible interpretation of the evidence, the Court will not second-guess the ALJ's determination that the paperwork was completed by Dr. Cardone.

Because Dr. Cardone is a treating doctor, and his opinion is contradicted by other doctors, the ALJ could only discount the opinion for specific and legitimate reasons supported by substantial evidence in the record.[1] *See Lester*, 81 F.3d at 830–31. The ALJ found that the opinion in the Questionnaire was "significantly incongruent and contradicted

---

[1] The same standard would be applied if the ALJ attributed the Questionnaire to Dr. Aslam, as Dr. Aslam was also a treating doctor.

by the available evidence." (AR 35). Some of the ALJ's reasons were specifically based on the determination that the Questionnaire was attributable to Dr. Cardone and not to another doctor. For example, the ALJ gave the reason that the Questionnaire was completed on February 23, 2015, but Dr. Cardone had not examined Plaintiff since April 18, 2014. *Id.* The ALJ also noted inconsistency between Dr. Cardone's April 18, 2014 report and the February 23, 2015 Questionnaire. *Id.* Specifically, the ALJ noted that Dr. Cardone's 2014 examination of Plaintiff showed normal findings, and Plaintiff did not allege any complaints during that examination. *Id.* But other reasons provided by the ALJ for not giving weight to the Questionnaire would be applicable no matter which doctor issued the Questionnaire.[2] For example, the ALJ noted that Dr. Cardone relied too heavily on the subjective complaints of the Plaintiff. *Id.* While this assertion could partially be based on Dr. Cardone not having examined patient since April 2014, it appears that the issuing doctor recognized in the Questionnaire that some of the answers were "per patient," which Plaintiff and Defendant have both acknowledged. (Doc. 12 at 9; Doc. 13 at 4). Additionally, the ALJ compared the February 23, 2015 Questionnaire with records from Plaintiff's examination on December 15, 2014, in which Plaintiff was "well-appearing and in no acute distress"; there was no noted edema and well-controlled blood pressure; Plaintiff denied acute palpitations, fatigue, or shortness of breath; and there was no wheezing, bronchi, or crepitation. (AR 35). Courts have found similar reasons offered by ALJs to be sufficiently specific and legitimate. *See, e.g.*, *Dean v. Comm'r of Soc. Sec.*, 504 F. App'x 563, 565 (9th Cir. 2013) (ALJ discounted the doctor's report because (1) doctor filled out only a standardized form, (2) appeared to rely mostly on patient's subjective reporting, and (3) findings were inconsistent with those of the State's physicians); *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (ALJ's reasons included that the doctor's questionnaire responses were inconsistent with the medical records); *Sheffer v. Barnhart*, 45 F. App'x 644, 645 (9th Cir. 2002) (ALJ's reasons included that the doctor's

---

[2] Even if the ALJ incorrectly attributed the Questionnaire to Dr. Cardone, such error was harmless because the ALJ also considered Dr. Cardone a treating physician and identified substantial evidence that justified giving the opinion no weight.

conclusions were based primarily on plaintiff's less-than-credible subjective complaints, and were contradicted by a considerable amount of objective medical evidence); *Weger v. Colvin*, No. CV-12-8029-PCT-SMM, 2013 WL 1789475, at *5 (D. Ariz. Apr. 26, 2013) (ALJ's reasons included that the doctor himself noted that the opinion was based on Plaintiff's subjective complaints); *Mezquita v. Comm'r of Soc. Sec. Admin.*, No. CV-16-01763-PHX-NVW, 2017 WL 4250606, at *4 (D. Ariz. Sept. 26, 2017) (ALJ assigned no weight to doctor's opinion because it was, *inter alia*, not consistent with the medical records and objective tests; based upon Plaintiff's subjective complaints; and contradicted by opinions of the consultative examiners, the State agency evaluators, and a treating doctor).

The Court concludes that the ALJ provided specific and legitimate reasons which were supported by substantial evidence in the record as to why he rejected the February 23, 2015 Questionnaire. "It is not the role of this Court to second-guess the ALJ's determinations concerning the weight he gave to each report and his decisions sorting out conflicts in the record, so long as the ALJ applied the correct legal standards and properly set forth specific and legitimate reasons in support of those decisions, as he did here." *Weger*, 2013 WL 1789475, at *6. Therefore, the ALJ's decision will be upheld.

**V. CONCLUSION**

For the reasons stated above,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly and terminate this case.

Dated this 11th day of March, 2019.

Honorable Susan M. Brnovich
United States District Judge

- 10 -